Commonwealth v. Lazar, Appellant.

418

Argued November 9, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*Walter Biddle Saul,* and with him *Ira Jewell Williams, Jr.,* and *Ira Jewell Williams,* for appellant.

*James W. Tracey,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., December 26, 1931:

The appellant, Israel Lazar, a naturalized citizen of the United States and a member of the Communist Party, was convicted of sedition, under the Act of June 26, 1919, P. L. 639, as amended by the Act of May 10, 1921, P. L. 435. It provides that the word "sedition" shall mean "any writing, publication, printing, cut, cartoon, utterance, or conduct, either individually or in connection or combination with any other person or persons, the intent of which is: (a) To make or cause to be made any outbreak or demonstration of violence against this State or against the United States. (b) To encourage any person or persons to take any measures or engage in any conduct with a view of overthrowing or destroying or attempting to overthrow or destroy, by any force or show or threat of force, the Government of this State or of the United States ...... It shall also include: ...... (f) any writing, publication, printing, cut, cartoon, or ut-

terance which advocates or teaches the duty, necessity, or propriety of engaging in crime, violence, or any form of terrorism, as a means of accomplishing political reform or change in government." The subdivisions quoted are those under which the indictment was drawn.

The appellant, on the evening of August 28, 1928, stood upon a box in the public street at the northeast corner of 13th and Reed Streets, Philadelphia, and addressed a group of fifty or sixty people in behalf of William Z. Foster, a candidate for the office of the President of the United States on the Communist ticket. In the course of his remarks he made the following utterances: "This government murdered Sacco and Vanzetto ...... This government is a strike-breaking government ...... Let us teach our young workers in time of war to shoot down the people who ordered us to shoot on other people ....... The only government in the world is the Russian Soviet ...... We could not get into power by participating in the election campaign, in order for the Communists to get into power, it is necessary to have a revolution, only by a revolution can they gain the power in this country ...... When the minority will refuse to submit to the will of the majority, and will use force and violence against the majority, then naturally the majority of the people will have to use force in order to combat the force of the minority."

It is contended by the appellant that he was not advocating a revolution by a minority but a revolution by a majority in anticipation that the parties in control would not peaceably surrender the reins of the government under constitutional forms, even though the workers or the Communists obtained the actual majority. Taking this language in conjunction with the other portions of his utterances, we think that was not the appellant's meaning. The more reason-

able interpretation is that the speaker was advocating a revolution by the Communists as a minority party. Undoubtedly, a jury would have been warranted in so concluding.

It is sufficient under section (b) of the act if one's intention is "to take any measures or engage in any conduct with a view of overthrowing or destroying . . . . . . by any force or show or threat of force, the government." The intent need not be expressly shown; it may be inferred. Actions or utterances oftentimes very plainly indicate purpose. Assuming that the intent was the gravamen of the offense, the trial judge, many times in his charge, emphasized the importance of the jury's determining the intent of the speaker, and affirmed the twentieth point submitted by the defendant, which reads as follows: "A question of intent is of great importance in this case and you must give it your most careful consideration because whatever the defendant is charged with having uttered depends on the intent on which these things were said. In concluding what the defendant's intent was, you must consider not only what the policemen say he said, but everything which he said." The court refused to affirm point twelve, which is the subject of one of the assignments, which reads as follows: "You may and should consider, in arriving at your conclusion concerning the matter of the defendant's intent, whether what he said concerned itself with the future only and not with the present." In view of the judge's instruction in his charge respecting the importance of the intent, we do not view his refusal to affirm the point as error, especially as the point is indefinite and vague as it does not call attention to what portion of the defendant's testimony is referred to. Furthermore, whether the appellant was dealing with the present or future is immaterial, as we shall later point out.

In our view, however, intent was not vital to this prosecution.

The jury having found the defendant guilty as indicted, we may conclude that he violated provisions of section (f), where intent is not an essential ingredient, and, therefore, not controlling. If the indictment charges an act that is within the prohibition of any portion of the statute, and there is sufficient evidence to support it, the conviction will be sustained. It may be noted, in passing, that there was only one count in the indictment, but as no objection was made on the ground of multiplicity, we are not concerned with its form.

The appellant calls our attention to Com. v. Belevsky, 79 Pa. Superior Ct. 12, 15, where we said, in discussing the purpose of the 1921 amendment: "It seems to have been the purpose of the amendment to require as an ingredient of the offense the intent to produce the results described in paragraphs A, B, C and D of the original act." It will be observed, however, that section (f) is not referred to in that opinion and that case is not authority for concluding that the intention of the appellant is necessarily involved in that section.

The appellant contends further that there could be no conviction as there was no incitement to *present* action averred or proven; that the jury should have been told to consider the fact that the meeting was orderly; that there was no violence or advocating of violence. It is conceded that there was no evidence of immediate action or disorder, but the Commonwealth is not required to prove that there was an outbreak or a demonstration of violence. The language used was a clear abuse of the inestimable privilege of free speech and was inimical to the public welfare. The effect of such language may not be immediately manifested, but his ranting utterances

clearly had for their ultimate purpose the undermining of the stability, and the usurping of the powers, by force, of the constituted authority. That is sufficient to warrant the conviction.

We are referred by appellant to Schenck v. U. S., 249 U. S. 47, 52, where Mr. Justice HOLMES, said, "The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent." Later, in Gitlow v. N. Y., 268 U. S. 658, 669, the court held that the statement quoted in the Schenck case, upon which the appellant, as here, relied, had no application where the legislative body itself has previously determined the danger of substantive evils arising from utterances of a specific character. In the course of that opinion, Mr. Justice SANFORD, speaking for the court, said, "That utterances inciting to the overthrow of organized government by unlawful means present a sufficient danger of substantive evil to bring their punishment within the range of legislative discretion is clear. Such utterances, by their very nature, involve danger to the public peace and to the security of the state. They threaten breaches of the peace and ultimate revolution. And the immediate danger is none the less real and substantial because the effect of a given utterance cannot be accurately foreseen . . . . . . It cannot reasonably be required to defer the adoption of measures for its own peace and safety until the revolutionary utterances lead to actual disturbances of the public peace or imminent and immediate danger of its own destruction; but it (the state) may, in the exercise of its judgment, suppress the threatened danger in its incipiency."

The last position taken by the appellant is that the Sedition Act, as applied to the defendant, contravenes

424

the 14th Amendment to the Constitution of the United States. In answer to this proposition, it is only necessary to cite the case of Com. v. Widovich, 295 Pa. 311, 323, wherein it is stated by Mr. Justice KEPHART, "The Sedition Act does not offend the right of free speech; it clarifies and makes certain that which was uncertain, and fixes a definite and precise standard for the conduct of individuals. The act prescribes offenses in certain language; nothing is left to the imagination. The same result is reached under the Fourteenth Amendment to the federal constitution. 'That the freedom of speech which is secured by the Constitution does not confer an absolute right to speak, without responsibility, whatever one may choose, or an unrestricted and unbridled license giving immunity for every possible use of language and preventing the punishment of those who abuse this freedom.' "

A review of this entire record convinces us that the defendant had a fair and impartial trial and that his utterances were in clear violation of our Sedition Act and that his conviction is justified.

The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in that court at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.