# First National Bank and Trust Company v. Anderson

*Arthur M. Lebovitz*, for plaintiff.
*H. Edwin Mountford*, for defendant Hartman.

COFFROTH, *P.J.*, November 15, 1977—This is an action in assumpsit which is before us on defendant Hartman's preliminary objections asserting the following challenges to venue and service of process:

(1) The action is improperly brought in Somerset County because defendant Hartman has no place of residence here and the cause of action did not arise out of business conducted by defendant in Somerset County; and

(2) Service of process was improperly made upon defendant Hartman "at her mother's address" in Ohio by certified mail under Pa.R.C.P. 2079 relating to nonresidents of the Commonwealth, and persons who become nonresidents or conceal their whereabouts, whereas defendant is a resident of Erie, Pa. and has not concealed her whereabouts.

The preliminary objections are endorsed with a notice to plead in substantial compliance with Pa.R.C.P. 1025 and 1361, and no answer was filed. Consequently, the unanswered averments of fact in the preliminary objections must be taken as admitted under Pa.R.C.P. 1029(b). See 2 Goodrich Amram 2d §§1028(c):2 and 1029:3. Therefore, we take it as established for purposes of these proceedings, as alleged, that defendant resides in Pennsylvania at 345 West 22nd Street, Erie, Pa., and that she has not concealed her whereabouts, This averment amounts to a representation that defendant is amenable to lawful service in Erie. It should be noted, too, that plaintiff's complaint avers that both defendants reside at West Springfield, Pa., which is also located in Erie County, Pa. The reason for plaintiff's action in serving defendant Hartman in Ohio as above stated is not given.

We scheduled the preliminary objections for hearing before the court on June 20, 1977, but no hearing or argument was held because plaintiff's counsel asked leave to submit the case on brief, to which defense counsel acceded, and leave was granted. As will appear from our discussion below, we now find that the factual record is insufficiently complete to enable us to make a proper determination of the venue issue and that leave to submit the case on briefs was improvidently granted.

• • •

## SERVICE OF PROCESS

Defendant challenges the validity of service of process upon her, as resident of Pennsylvania, on the ground that service was impermissibly made under Pa.R.C.P. 2079(a) which applies only when

defendant is or becomes a nonresident of the Commonwealth or conceals his or her whereabouts, and that service should have been made under Pa.R.C.P. 1009(b) which applies to actions against an individual who is present in Pennsylvania or who maintains a residence, office or place of business in Pennsylvania.

Pa.R.C.P. 1009(b) authorizes service on defendant by personal service, or by substituted service at defendant's residence, office or place of business; such service must be accomplished in the forum county, unless the action has been filed in the cause of action or transaction county, in which event deputized service in any county of the Commonwealth is permitted under Rule 1009(e). Rule 2079(a) authorizes extra-state service on defendant in certain specified cases by personal service or by substituted service by registered or certified mail to the Secretary of the Commonwealth and to defendant at his last known address.[1]

---

1. Pa.R.C.P. 1009(b) and (e) provide as follows:

"(b) When the defendant is an individual, the writ of summons, or the complaint if the action is commenced by complaint, may be served

"(1) by handing a copy to the defendant; or

"(2) by handing a copy

"(i) at the residence of the defendant to an adult member of the family with which he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or

"(ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or

"(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof."

The sheriff's return states that service of the complaint was made on defendant Hartman on November 12, 1976, in conformity with Rule 2079(a), by certified mail to the Secretary of the Commonwealth and to defendant at Conneaut, Ohio, % Eleanor Watson whose signature appears on the return receipt card dated November 12, 1976. Defendant being a resident of Pennsylvania who has not concealed her whereabouts, service should have been made under Rule 1009. Thus an incorrect method of service was used here. Nevertheless, defendant Hartman admittedly received the process. Her petition for an extension of time to file responsive pleadings to the complaint, filed November 30, 1976, avers that "the complaint was actually received by the petitioning defendant on November 21, 1976." The extension requested

---

"(e) When an action is commenced against an individual in a county in which the cause of action arose or where a transaction or occurence took place out of which the cause of action arose, or in any other county authorized by law, or is brought against two or more defendants under Rule 1006(c), the plaintiff shall have the right of service in any other county by having the sheriff of the county in which the action was commenced deputize the sheriff of the other county where service may be had."

Rule 2079(a) provides as follows:

"(a) If an action of the class specified in Rule 2077(a)(1) is commenced in the county in which the cause of action arose, process may be served upon the defendant personally or by having the sheriff of said county send by registered mail, return receipt requested, a true and attested copy of the process:

"(1) to the Secretary of the Commonwealth, accompanied by the fee prescribed by law, and

"(2) to the defendant at his last known address with an endorsement thereon showing that service was made upon the Secretary of the Commonwealth."

was granted and a later petition for further extension was also granted, following which the present preliminary objections were timely filed.

Defendant has not been adversely affected or prejudiced in any way by use of the incorrect method of service. Our issue is whether use of an incorrect method invalidates the service under these circumstances.[2]

The proper method of raising a question of jurisdiction or venue is by preliminary objections under Pa.R.C.P. 1017(b)(1), which includes jurisdiction over the person is a waiver of those issues: 2 Goodrich-Amram 2d §1017(b):7; 29 P.L.E. §6, 543. Failure to raise questions of venue and jurisdiction over the person: 2 Goodrich-Amram 2d §§1017(b):3 and 1032:2; 29 P.L.E. §7, 544; but see Sharp v. Valley Forge Medical Center, 422 Pa. 124, 221 A. 2d 185 (1966). There is a basic difference between jurisdiction over the subject matter of the action (competence of the court) and jurisdiction over the parties to the action: the former can never be acquired by consent, waiver or estoppel, but the latter may be so acquired. See Crown Construction v. Newfoundland American Ins., 429 Pa. 119, 124, 239 A. 2d 452 (1968); Papencordt v. Masterwork Paint Co., 412 Pa. 508, 511, 194 A. 2d 878 (1963); Bell Appeal, 396 Pa. 592, 597, 152 A. 2d 731 (1959); Schleifer v. Zoning Board, 374 Pa. 277, 280, 97

---

2. The relief requested in the preliminary objections for the improper service is that "judgment be rendered" for defendant. If service is found to be impermissibly defective, the proper remedy is not to dismiss the action or to render judgment, but to set aside the service. See Nicolosi v. Fittin, 434 Pa. 133, 252 A. 2d 700 (1969); 1 Standard Pa. Pract. §95, 657; 1 Goodrich-Amram 2d §1009(e):1.

A. 2d 782 (1953); Continental Bank v. Brodsky, 225 Pa. Superior Ct. 426, 429, 311 A. 2d 676 (1973); Tyson v. Basehore, 222 Pa. Superior Ct. 572, 576, 295 A. 2d 189 (1972); Com. ex rel. Rothman v. Rothman, 209 Pa. Superior Ct. 180, 184, 223 A. 2d 919 (1966); Com. v. Ansell, 26 Somerset 248, 56 D. & C. 2d 759 (1971); 10 P.L.E. §19, 24; 21 C.J.S. §85 a and c, 127. Of course, defendant Hartman's acknowledgement that she received the complaint is not the equivalent of a consent to jurisdiction, nor is it a waiver of or estoppel to challenge illegality of service; it is but the admission of the fact of receipt, not an acceptance of service in the former sense. See Pa.R.C.P. 1011. So, the issue of the service's validity remains.

Prior to adoption of the amendments to the Rules of Civil Procedure, a defendant could appear specially to challenge service without waiving, accepting or consenting to irregularity in service; under the amendments, the same right exists but it is exercised by filing preliminary objections instead of by special (de bene esse) appearance. See Monaco v. Montgomery Cab Co., 417 Pa. 135, 138, n. 1, 208 A. 2d 252 (1965); 1 Goodrich-Amram 2d §1012:1. The very existence of such a procedure virtually presupposes receipt of knowledge of the action. See Lumbermens Mutual v. Borden Co., 268 F. Supp. 303, 309-10 (S.D.N.Y. 1967).

Nevertheless, the fact of defendant Hartman's acknowledgement of service is central to our inquiry because it establishes that she has already received by an improper mode of service the same process, notice and opportunity to defend the litigation as she would have received, or will receive, by use of a prescribed mode of service. The second and

related salient fact is that defendant Hartman concedes that she is available and legally subject in this action to proper service in Erie, Pennsylvania (assuming venue can be sustained), so that the same process which she now possesses which got to her by an unauthorized route can now be served upon her by an authorized route, if we should strike the present service and require that it be re-served in the correct manner. Defendant thereby would accomplish for herself merely delay (which she may or may not want, and which might be accomplished by a continuance), and perhaps the satisfaction of making plaintiff redo the service and of playing some small role in preserving the "system." No judgment has been entered against her in the case and she is in no way disadvantaged in defending the case by reason of defective service. Requiring such re-service would seem to be a "foolish circumlocution." See Com. v. Walker, 26 Somerset 140, 144; Walker License, 55 D. & C. 2d 395, 398 (1970). These circumstances suggest that defendant's substantial rights are not impaired or affected, and that we would be justified in disregarding the defective service under Pa.R.C.P. 126 which provides as follows: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Having no clear appellate authority deciding the applicability of Rule 126 to these circumstances, the question warrants analysis and discussion.

The legal aspects of service of process, as a

means of acquiring judicial jurisdiction over a party, must be dealt with on two levels: the law of the state, and constitutional due process whose requirements must be met by the state law.

"In the United States, the due process clause of the Fourteenth Amendment of the Constitution prohibits the States from acting through their courts when they have no judicial jurisdiction, and the due process clause of the Fifth Amendment of the Constitution prohibits the United States from taking similar action. A judgment rendered in this country without judicial jurisdiction is void, even in the State where rendered, and is not entitled to full faith and credit in sister States." Restatement, 2d, Conflict Of Laws, §24, Comment e.

Under the Constitution, a state has power to exercise jurisdiction over a person if the person's relationship to the state is such as to make the exercise of jurisdiction reasonable: Restatement, 2d, Conflict Of Laws, §24(1). The constitutional essentials of a reasonable relationship between state and person as a basis for the state's exercising judicial jurisdiction over that person are:

(1) Some contact between the state and the person, so that maintenance of the suit does not offend traditional notions of fair play and substantial justice: Restatement, 2d, Conflict Of Laws, §24, Comment b. This test applies equally to individuals and corporations. See: 62 Am. Jur. 2d, Process, §79; Sum. Pa. Jur., Conflict Of Laws, §173; Crouse v. American Ski Corp., 29 Somerset 22, 24 (1973). "Under civilized systems of law a state must have certain minimum contacts with the parties or their property in order to possess legal power to exercise authority through its courts." Restatement, 2d,

Conflict Of Laws, Chapter 3, Introductory Note, p. 100. Case law recognizes a number of such contact bases for the exercise of judicial jurisdiction over the person: Id. §27(1). For our purposes, we need to note only that the presence, domicile or residence of a defendant within the state is sufficient: Fossleitner Appeal, 435 Pa. 325, 333, 257 A. 2d 522 (1969); Restatement, 2d, Conflict Of Laws, §§28, 29 and 30; Sum. Pa. Jur., Conflict Of Laws, §173 et seq.

(2) A reasonable method of giving notice of the action and a reasonable opportunity to be heard: Restatement, 2d, Conflict Of Laws, §25; Sum. Pa. Jur., Confict Of Laws, §§172 and 214. The method of notification employed must be one which is reasonably likely to give actual notice; it need not always be the best method, although relative effectiveness is a factor in determining reasonableness: Restatement, 2d, Conflict Of Laws, §25, Comment d. Nor is it essential that actual knowledge be received by the party: Id. §25, Comment e. Generally, service by leaving process at defendant's last known residence, or by registered mail, are modes of service which may constitutionally be substituted for personal service: Id. §25, Comment d.

In the present case, the first requirement of minimum contact is satisfied because defendant Hartman is a Pennsylvania resident. And since defendant received the complaint in time to defend the action, the second requirement of notice and opportunity to be heard has been met. Accordingly, due process is satisfied.[3]

---

3. This conclusion is based on the assumption that the Pennsylvania rules for service are facially valid under the Con-

Due process having been afforded, the question of the essentiality of the compliance with the method of service prescribed by the Pennsylvania Rules of Civil Procedure is a question of Pennsylvania law.

"Every state has its own requirements as to notice and opportunity to be heard. These requirements are often more stringent than those imposed by the Constitution of the United States. If constitutional requirements are satisfied, a judgment is not necessarily void because of failure to comply with the requirements of the state of rendition. The judgment's effect depends upon the local law of that state." Restatement, 2d, Conflict Of Laws, Chapter 3, Introductory Note, page 101; see also, id. §25, Comment c, and §105.

In Pennsylvania, prior to adoption of the Rules of Civil Procedure which now govern the methods for service of civil process, the methods of service were specified by statute. See, for example, Act of July 9, 1901, P.L. 614, sec. 1, 12 P.S. §291, and other statutes collected in 12 P.S. §292 et seq. Although service of process is vital to obtaining jurisdiction over the person, the manner and means of service have always been regarded as procedural rather than substantive in nature; service of process statutes do not affect the jurisdiction of the courts in the substantive sense of the subject matter: 72 C.J.S., §25, 1022.[4] On this principle, service of process may be

---

stitution. See Wuchter v. Pizzutti, 276 U.S. 13, 72 L.Ed. 446 (1928); Restatement, 2d, Conflict Of Laws §25, Comment f, and Reporter's Note thereto.

4. See also: Mazurek v. Farmers' Mutual Fire Ins.,320 Pa. 33, 181 Atl. 570 (1935); Specktor v. North British, supra; Gengenbach v. Willow Grove Park Co., 280 Pa. 278, 124 Atl.

regulated by procedural rules of court without violating the prohibition that such rules may not affect jurisdiction. See Act of June 21, 1937, P.L. 1982, as amended, 17 P.S. §61; Goodrich-Amram 2d, §2770(a):1; Pennsylvania Constitution, Article 5, §10(c). That prohibition applies only to subject matter jurisdiction. See Specktor v. North British & Merc. Ins. Co., 293 Pa. 232, 235, 142 Atl. 212 (1928). Consequently, although service of process is the means for exercising subject matter jurisdiction and for acquiring jurisdiction over the person, the statutes and rules prescribing modes of service are but procedural codes, of a regulatory nature, and do not themselves establish basic or substantive rights.

Nevertheless, the courts historically have required rigid adherence to the methods and procedures prescribed for service of process, holding them to be mandatory and exclusive and regarding as void the use of any other procedure for service. See 1 Standard Pa. Pract. 614, §62. This rigidity can be traced to the common law which became the law of Pennsylvania and which recognized only personal service within the territorial jurisdiction of the court from which the process issued, unless some other method of substituted or constructive service was clearly authorized by statute. Heaney v. Mauch Chunk Borough, 322 Pa. 487, 490, 185 Atl. 732 (1936), succinctly states the rule:

---

425 (1924); Orient B. & L. v. Gould, 239 Pa. 335, 86 Atl. 863 (1913); Excelsior Saving Fund v. Cochran, 220 Pa. 634, 70 Atl. 432 (1908); Park Bros. & Co. v. Oil City Boiler Works, 204 Pa. 453, 54 Atl. 334 (1903); Kolesar v. Slovak Union, 122 Pa. Superior Ct. 318, 186 Atl. 302 (1936); Frick v. Maryland Co., 44 Pa. Superior Ct. 518 (1910).

"The common law rule in regard to service of process established by centuries of precedent, has always been accepted as binding in this State. In an action in personam the process must be served personally within the jurisdiction of the court in which the action was commenced, upon the person to be affected thereby. This rule prevails, unless a statute clearly and definitely manifests that a different method as to service has been promulgated by the legislature."[5]

The common law's approval of personal service only, except to the extent otherwise clearly provided by statute, makes such methods of service mandatory (72 C.J.S. §25, 1022) and exclusive (1 Standard Pa. Pract., §62), and strikes as void any other service. "Unless the statutory mode of service of a writ is observed, it is not a service, and the defendant is not compelled to obey the command of the writ." Powell v. Perkins, 211 Pa. 233, 237, 60 Atl. 731 (1905).

This dogma has occasionally been relaxed to disregard very slight irregularities in service. See Wax v. Van Marter, 124 Pa. Superior Ct. 573, 189 Atl. 537 (1937), no registered mail return receipt attached to return of service as required by statute, defendant having refused delivery; see also Miller v. Carr, 221 Pa. Superior Ct. 306, 292 A. 2d 423 (1972), sheriff's return stated that service was

---

5. In general accord are: Olson v. Kucenic, 389 Pa. 506, 133 A. 2d 596 (1957); Vaughan v. Womeldorf, 366 Pa. 262, 263, 77 A. 2d 424 (1951); Koll v. Pickford, 353 Pa. 118, 121, 44 A. 2d 276 (1945); Giampalo v. Taylor, 335 Pa. 121, 6 A. 2d 499 (1939); Williams v. Meredith, 326 Pa. 570, 574, 192 Atl. 924 (1937); Atlantic Seaboard Nat. Gas Co. v. Whitten, 315 Pa. 529, 173 Atl. 305 (1934), nonresident of state.

made on "defendant's mother" instead of naming her as specified in Pa.R.C.P. 1013(b); Lumbermens Mutual v. Borden, supra, and cases therein cited; SCM Corporation v. Brother International Corporation, 316 F. Supp. 1328 (S.D.N.Y. 1970), slight error in stating defendant's corporate name; Davidman v. Oritz, 314 N.Y.S. 2d 198 (1970), service on defendant's attorney, instead of defendant, in the defendant's presence, but see Sharp v. Valley Forge, supra. We have not seen this relaxation extended in any case to approving an unauthorized mode of service.[6]

Occasionally, too, the courts will find some good reason for insisting on strict observance of statutes and rules governing service of process.[7] But generally the reason given is merely that statutes in derogation of the common law must be strictly construed: McCall v. Gates, 354 Pa. 158, 47 A. 2d 211

---

6. The following statement appears in 6 Goodrich-Amram 2d §2077(a):1.1: " . . . the rule of liberal construction has been applied in order to minimize the effect of minor irregularities in the details of service upon a statutory agent or of notice to the defendant. This is a proper approach to the problem but it has not always been followed and some courts have applied the rule of strict construction to the point of invalidating the service because of a minor irregularity in the notice to the defendant."

7. For example, deputized service is generally permitted only when the action is brought in the cause of action or transaction county, and the courts have uniformly stricken deputized service in actions brought in some other county. See Koll v. Pickford, supra; Slezynger v. Bischak, 224 Pa. Superior Ct. 552, 307 A. 2d 405 (1973); Hartman v. Donahue, 142 Pa. Superior Ct. 382, 16 A. 2d 691 (1940). In the latter case the court said at 385-6: "The reason behind modern statutes and rules allowing extra-county or other extraterritorial service when the action is brought in the jurisdiction where the cause

(1946); Null v. Staiger, 333 Pa. 370, 373, 4 A. 2d 883 (1939); Williams v. Meredith, 326 Pa. 570, 572, 192 Atl. 924 (1937); Heaney v. Mauch Chunk Borough, supra, 490. In the field of service of process, this axiom necessarily means more than strict interpretation of ambiguities in statutory language; it means that statutes in derogation of the common law must not only be strictly construed but must also be strictly pursued, consistent with the common law concept that unauthorized service is void.

See 62 Am. Jur. 2d, Process, §38; Neff v. Tribune Printing Co., 421 Pa. 122, 124, 218 A. 2d 756 (1966).[8]

---

of action arose is that such jurisdiction is the ideal place for the trial because of the availability of witnesses, presence there of physical facts relevant to the issue, and other matters of a similar nature. It is eminently fair to require not only the orignal, but also the additional defendant to return to the county where the liability was created. It is contrary to well settled principles of fair dealing and contrary to well established principles to require a defendant, original or additional, to come to a remote place having no connection with the occurrence or the party summoned, and where he could not be served personally, and there defend the action." Accord, Koll v. Pickford, supra, 122.

8. This rule of strict construction in favor of the common law ". . . bears close relation to the maxim unius est exclusio alterius (the mention of one is the exclusion of another)." Sands, Sutherland Statutes and Statutory Construction (4th Edition 1974, Callaghan) Vol. 3, §61.01, page 42. Compare the following principles of statutory construction: (1) statutory remedies are exclusive and must be pursued: Kimmel v. County Commissioners, 29 Somerset 408 (1974), page 410 and Appendix [2]; (2) mandatory v. directory statutes, 34 P.L.E. 461, §141; (3) remedial statutes designed to correct existing law should be liberally construed, 82 C.J.S., §388, 918.

With the advent of the Pennsylvania Rules of Civil Procedure, pursuant to the Act of June 21, 1937, P.L. 1982, as amended, 17 P.S. §61, the rules included comprehensive provisions prescribing the permissible modes of service of process, supplanting the service statutes and having the effect of statute. In addition to Rule 126 above-quoted, mandating a liberal construction of the rules, Rule 130 was adopted which flatly rejects the strict construction maxim as follows: "The principle that laws in derogation of the common law are to be strictly construed, shall have no application to the rules promulgated by the Supreme Court." The same principle was also abrogated prospectively as to statutes by the Statutory Construction Act of May 28, 1937, P.L. 1019, 46 P.S. §558; see also Act of November 25, 1970, P.L. 707, as amended, 1 Pa.C.S.A. §1928(a), and compare 1 Pa.C.S.A. §1504. The maxim is still applicable to statutes enacted on and prior to September 1, 1937. See Tafel Estate, 449 Pa. 442, 446, 296 A. 2d 797 (1972); Albert Einstein Medical Center v. Forman, 212 Pa. Superior Ct. 450, 455, 243 A. 2d 181 (1968); 34 P.L.E. 506, §162. Accordingly, the abolition of the maxim is clearly fixed as public policy in this state by express provisions of statute and the Rules of Civil Procedure. These clear and categorical commands undermine the foundation for older decisions on service of process, and appear to presage the death of the common law strictness in allowing service of process only as authorized by the rules, and to permit any service which will accomplish the essentials of due process and which does not affect substantial rights under Rule 126. Such a conclusion seems confirmed by the permissive language of the service rules themselves that process

"may be served" in the specified way, thus suggesting directory rather than mandatory provisions. See Rule 1009(b) and (c).[8a]

This notion soon proved unjustified, and the courts in applying the Rules of Civil Procedure continued to apply the strict construction rule in virtual disregard of Rule 130, supra, which expressly abolished it. In Vaughan v. Womeldorf, 366 Pa. 262, 263, 77 A. 2d 424 (1951), the court said that the common law rule requiring personal service in transistory actions "still prevails except where changed by civil rules of procedure or statute." In McCall v. Gates, supra, the court struck down service upon defendant in Michigan by registered mail to the Secretary of the Commonwealth and to defendant in violation of the Rules of Civil Procedure restricting such service to actions filed in the cause of action county, on the ground that "rules as to service of process are in derogation of common law and must be strictly construed." p. 161. In Neff v. Tribune, supra, the court cited and relied on McCall v. Gates, supra, and said at p. 124: "The rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made: McCall v. Gates, 354 Pa. 158, 47 A. 2d 211 (1946)." Similarly, in Sharp v. Valley Forge Medical Center, 422 Pa. 124, 221 A. 2d 185 (1966), again citing and relying on McCall v. Gates, supra, the court repeated that statement at p. 127.

See also: Koll v. Pickford, supra; Standard Oil v. Munday, 150 Pa. Superior Ct. 499, 28 A. 2d 813

---

8a. The maxim of strict construction still applies to municipal ordinances. See Beggs v. Somerset Borough Zoning Board, 34 Somerset 161, 176, note [4] (1976).

(1942); Hartman v. Donahue, 142 Pa. Superior Ct. 382, 16 A. 2d 691 (1940). We find no service of process case citing Rule 130, supra. Compare Horner Sales Corp. v. Motor Sport, 377 Pa. 392, 105 A. 2d 285 (1954). We find only one appellate case applying Rule 126, supra, to service of process: Miller v. Carr, supra, in which the irregularity of service was so minor as to have justified its disregard even before the Rules of Civil Procedure, as previously discussed. See also Zollinger v. Adam Eidemiller, Inc., 41 Westmoreland 247 (1959).

The controlling fact in our inquiry is the intention of the Supreme Court in adopting its provisions for service, if we can discover it. See Civil Rules 127 and 128. Among the considerations here are: the object to be attained, the prior practice, and the consequences of a particular interpretation, as stated in Rule 127(c)(4), (5) and (6).[9]

The problem is best made apparent in the consequences likely to flow from a permissive system of service in which the litigant (whose goals in litigation are self-centered), aided and advised by a

---

9. Even the maxim of strict construction of laws which change the common law is or should be viewed as merely a criterion of legislative intent. It is so regarded in Sands, Sutherland Statutes and Statutory Construction, supra, §61.04, which states the following (55-56):

"If the rule is viewed as a presumption against change of the common law, as some of the critics appear to regard it, then in most cases it contradicts legislative purpose . . . "

"An a priori presumption against change is not a useful means, by itself, for deciding how much a statute changes prior law . . . "

"The test of validity for this as for other aids to interpretation is its relevance and probative force to the process of applying the pertinent criteria of interpretation, i.e., legislative intent or manifested meaning. To the extent that it is a true and

resourceful profession, could use any method of service so long as it complies with due process by giving notice of the action and an opportunity to defend. Such an elastic and permissive system of service will not fill the needs of the judicial system. Two aspects of that need, in which the mode of service is vital, readily occur to us:

(1) Fairness in a system of service is closely tied to venue of the action, as previously noted in this opinion. Extra-territorial service commanding parties who do not reside in the forum to appear there is justified only if venue is laid in the cause of action or transaction county with which all parties have had significant contacts. Thus the mode of service becomes important, according to venue and the location of the parties, and should not be left to determination by a party claimant.

(2) The judicial system allows default judgment for the party claimant against the party served who does not appear in response to service of process, and the judicial system in order to insure that its judgment is based upon essential fairness must concern itself with the mode of service and the documentation of the facts of service which underlie the judgment.

---

valid insight about human nature that people do not ordinarily change the existing order of things with broad and sweeping strokes there is justification for assuming, or presuming, that legislatures would not ordinarily intend their enactments to be understood as making changes beyond their clear purport and, correlatively, that statutes would not ordinarily be understood as doing so. On this basis the rule can still be counted a legitimate and useful aid for interpretation, to be considered as other interpretive aids in the process of making judgments about what effects should be given to statutes."

For the foregoing reasons, service of process has a function which extends beyond the mere giving of notice; what is needed is system which prescribes reasonable and knowable rules which if followed carry an assurance of fair treatment and of the soundness of default judgments.

Granted that requiring adherence to rules of service of process in order to obtain jurisdiction over the person is sound as a general rule, the question remains how far the court may go in service of process cases in disregarding "any error or defect of procedure which does not affect the substantial rights of the parties" as provided in Pa.R.C.P. 126. As previously noted, prior to the Rules of Civil Procedure the courts were willing to overlook only the most trivial of irregularities in service of process even though the defendant was not noticeably prejudiced thereby. But it seems clear that Rule 126, considered in relation to Rule 130 and the liberalizing tendency of the entire scheme of the rules in order to save unnecessary expenditure of time and money, is and should be applicable to service of process cases. See Vaughan v. Womeldorf, supra, 266; Miller v. Carr, supra; 1 Goodrich-Amram 2d §126:3. Rule 126 should not be measured by the pre-rule cases which excused only trivia; instead, under Rule 126 the test is whether any substantial right has been affected by the procedural error or defect, that is, whether there is palpable prejudice. See 1 Goodrich-Amram 2d §126:1.

Even though there may be some prejudice or adverse consequence from improper service, if the prejudice is remediable by some method short of setting aside service, that should be done. Thus, if extra-county service is improperly used to summon defendant to a forum which is not the cause of

action or transaction county and in which defendant should not be required to defend, he is prejudiced. But if the prejudice can be remedied by transferring venue to a proper county, that should be done without setting service aside: Pa.R.C.P. 1006(e). Similarly, if a default judgment is improperly entered on the basis of incorrect service, or an incorrect return, defendant is prejudiced, but if the prejudice may be cured merely by striking the judgment without setting aside the service and thereby affording defendant full opportunity to defend that should be done. See Sharp v. Valley Forge, supra. Likewise, if for any reason, sustaining the defective process would require defendant to defend a suit which he would not under the circumstances be required to defend by some authorized mode of service of process, he is prejudiced and the service would have to be set aside.[10] In the present case, none of these situations exists, and no other prejudicial consequence of the service upon defendant Hartman appears, assuming that venue here can be supported as previously discussed.[11]

It cannot be fairly said that the appellate decisions on these questions under the Rules of Civil Procedure clearly support our views, yet we think they are not inconsistent with them and can be squared with Rule 126. Vaughan v. Womeldorf,

---

10. If defendant Hartman had been a resident of Ohio when served there, the service was unauthorized in this type of action. See 6 Goodrich-Amram 2d 2077(a):1. Therefore, the service would have to be set aside because she could not have been served by any authorized method.

11. The burden of proof in showing an absence of prejudice should rest on the party seeking to sustain defective service.

McCall v. Gates, Koll v. Pickford, Standard Oil v. Munday, and Hartman v. Donahue, all supra, are cases in which service of process was set aside because process was improperly served by deputization from a forum not the cause of action or transaction county; in such case, defendant is prejudiced by being summoned to a county where he ought not to be required to travel and to litigate. It is true that service was set aside in those cases instead of transferring the action to a proper county, but venue was not improper in any of those cases and was, therefore, not eligible for transfer; moreover, those cases were all decided before transfer for improper venue was made permissible by the adoption of Pa.R.C.P. 1006(e). Robinson v. Robinson, 362 Pa. 554, 67 A. 2d 273 (1949), was a contempt proceeding to enforce a default judgment entered against defendant; service of the complaint had been improperly made in Pennsylvania at a place thought to be the residence of defendant who was in fact a nonresident. Enforcement was refused because the service was void. Since there was no basis for extra-state service on defendant under nonresidence statutes, defendant was irremediably prejudiced; he could not be required to defend the suit because he could not under the circumstances be subjected to it by any authorized mode of service. Setting aside the service would be proper even under Rule 126.

Neff v. Tribune, supra, is more troublesome. In that case, service was preliminarily challenged on the ground of an improper sheriff's return which failed to recite all of the facts required by Pa.R.C.P. 1013, and was set aside. In our view, if defendant in that case had obtained the process in time to defend, he was not prejudiced by the error in the re-

turn which should be disregarded under Rule 126. But the decision cannot be construed as rejecting our view because Rule 126 was neither cited nor considered by the Supreme Court. Nothing can be stare decisis which was not in fact considered and determined by the court: Brolasky's Estate, 302 Pa. 439, 446, 153 Atl. 739 (1931); Erie Ry. Co. v. Com., 66 Pa. 84, 88-9 (1870); Com. v. Lazar, 103 Pa. Superior Ct. 417, 422, 157 Atl. 701 (1931); Com. v. Kimmel, 28 Somerset 50, 60 (1972); 21 C.J.S. §209, 380. No appellate case has been faced with rethinking traditional service of process rules in light of Pa.R.C.P. 126 through 130; those rules are of general application, and do not exempt service of process problems from their impact. Those who have analyzed the relationship between Rule 126 and service of process take substantially the view we espouse. For example, the authors of 1 Goodrich-Amram 2d, in considering the relationship between Rule 126 and the return of service, state in §1013(b):1, page 532: "However, under the authority of Rule 126 the court need pay little attention to alleged errors in the sheriff's return, particularly where the defendant was actually served or has otherwise obtained actual knowledge of the pending action. The court may disregard any error or defect which does not affect the substantial rights of the parties." As to errors in the sheriff's return, see also: Tenos Bros. v. Mathews Trucking, 17 Beaver 72 (1955) and 1 Standard Pa. Pract. §113.

Of course, in applying Rule 126, or indeed any rule or statute, the court may not focus entirely on the parochial interests of litigants; as stated in Pittsburgh National Bank v. Garrity, 31 Somerset 333, 336 (1976), the court "has the responsibility for looking after the interest of the judicial system

as system. The court necessarily takes a more detached view of the larger picture than do litigants . . . " We see no threat to the system of service of process from the application of Rule 126; with a properly balanced approach to the concept of prejudice as above suggested, the new liberality under the Pennsylvania Rules of Civil Procedure is not likely to encourage any substantial disregard for the rules for service of process, although the approach will be materially different from that of the common law. As stated in Lumbermen's Mutual v. Borden, supra, 310: " 'Where the summons eventually gets to the person intended to be served, and this is admitted by all, it is difficult to justify formal insistence upon the letter of the statute.' "[12]

We think the service in this case should be sustained.

## ORDER

Now, November 15, 1977, the preliminary objections to service of process on defendant Hartman are dismissed; the case shall be scheduled for hearing on the preliminary objections to venue, consistent with the foregoing opinion.

12. "Every so often a judge finds his legal sense overwhelmed by common sense." Spaeth, J., in Steinke v. Steinke, 238 Pa. Superior Ct. 74, 83, 357 A. 2d 674 (1975).